```
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS
 2                     TOPEKA, KANSAS


 3

      UNITED STATES OF AMERICA,    )  ORIGINAL
 4    ----------------- Plaintiff,)
                                   )  Case No.
 5         vs.                     )  09-40041-JAR
                                   )
 6    ALFONSO RUBIO-AYALA,         )  App. No.
      ----------------- Defendant.)  11-3041
 7

 8         TRANSCRIPT OF CHANGE OF PLEA HEARING

 9          PROCEEDINGS had before the Honorable

10    Julie A. Robinson, United States District

11    Court Judge, for the District of Kansas,

12    Topeka, Kansas, on the 4th day of November,

13    2010.


14

      APPEARANCES:
15
      For the Plaintiff:  Gregory G. Hough
16                        Asst. U.S. Attorney
                          290 U.S. Courthouse
17                        444 S.E. Quincy Street
                          Topeka, KS  66683
18
      For the Defendant:  Stephen W. Kessler
19                        Attorney at Law
                          3360 S.W. Harrison Street
20                        Topeka, KS  66611

21                        Alfonso Rubio-Ayala
                          Defendant
22
      Interpreter:        Marcela Renna
23
      Court Reporter:     Sherry A. Harris, C.S.R.
24


25
```

```
 1                    PROCEEDINGS

 2               THE COURT:  All right.  We're here

 3       in United States versus Alfonso Rubio-Ayala,

 4       09-40041-02.  Your appearances, please.

 5               MR. HOUGH:  May it please the Court,

 6       Your Honor, the government appears through

 7       Assistant United States Attorney, Greg Hough.

 8               MR. KESSLER:  Alfonso Rubio-Ayala

 9       appears in person and with counsel, Steve

10       Kessler, Your Honor.

11               THE COURT:  All right.  And we're

12       here for a change of plea this morning?

13               MR. KESSLER:  Yes, Your Honor.

14               THE COURT:  All right.  Mr. Rubio,

15       if you'll stand and raise your right hand,

16       we'll administer an oath to you.

17                      (THEREUPON, the defendant was

18       sworn in open court).

19               THE COURT:  All right.

20               MR. KESSLER:  Do you want us to

21       remain here?

22               THE COURT:  Ms. Renna, why don't we

23       swear you in since this is a separate hearing

24       from the trial.

25                      (THEREUPON, Ms. Renna was sworn
```

1    in open court to interpret English into

2    Spanish and Spanish into English).

3              THE COURT:  Mr. Rubio, will you tell

4    me your full legal name and your age?

5              THE DEFENDANT:  Alfonso Rubio-Ayala.

6    7-28-83.

7              THE COURT:  Do you understand

8    Ms. Renna, who's interpreting for you?

9              THE DEFENDANT:  Yes.

10             THE COURT:  What's your highest

11   level of education?

12             THE DEFENDANT:  Sixth grade of

13   elementary school.

14             THE COURT:  Are you able to read?

15             THE DEFENDANT:  Yes.

16             THE COURT:  All right.  Have you

17   undergone any treatment recently for mental

18   health issues or for drug or alcohol abuse or

19   addiction?

20             THE DEFENDANT:  No.

21             THE COURT:  And today are you under

22   the influence of any drug, medication, or

23   alcoholic beverage?

24             THE DEFENDANT:  No.

25             THE COURT:  In this case, you were

1          charged with a document entitled Superseding

2          Indictment.  Have you received a copy of this

3          document that contains the charges?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  Have you gone over the

6          indictment with Mr. Kessler?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  Do you understand what

9          you're charged with?

10                    THE DEFENDANT:  Yes.

11                    THE COURT:  And has Mr. Kessler

12          discussed with you the evidence that the

13          government has against you in this case?

14                    THE DEFENDANT:  Some he has.  Not

15          everything, but some.

16                    THE COURT:  Well, of course, you've

17          seen evidence.  Today is Thursday, Thursday

18          morning, and we've had two full days of

19          evidence, Tuesday and Wednesday this week of

20          trial.  So you're aware, for example, of all

21          the evidence that was presented in the last

22          two days about documents and other items that

23          were seized from your house, correct?

24                    THE DEFENDANT:  Yes.

25                    THE COURT:  And that there's

1     evidence that ties you to Mr. Molina, for

2     example?

3              THE DEFENDANT:  No.

4              THE COURT:  Well, there's evidence

5     that shows that the two of you knew each

6     other, correct?

7              THE INTERPRETER:  Could you repeat

8     the question?

9              THE COURT:  Yes.

10             There's evidence that shows that you

11    and Mr. Molina knew each other, correct?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Including-- we have in

14    evidence in Mr. Molina's house there were

15    documents showing cars titled in your name

16    and in the name of other people, correct?

17             THE DEFENDANT:  Yes.

18             MR. HOUGH:  Judge, if I may, please.

19             THE COURT:  Yes.

20             MR. HOUGH:  The defendant made the

21    comment that he had discussed some, not all,

22    of the evidence with counsel.  We believe it

23    imperative that he acknowledge that he's been

24    privy to the statements and guilty pleas of

25    Renato Garcia-Medina, Gary Heath, Samuel

1          Juarez-Sanchez, Ramiro Soto, Armando Soto.

2                    THE COURT:  Is that true, Mr. Rubio,

3          that you know-- that you have learned what

4          these individuals have told the police

5          officers when they interviewed them?  There's

6          reports made of what they said to the DEA or

7          other police officers?

8                    THE DEFENDANT:  I don't know exactly

9          what they said.  I was told that they were

10         talking about me, but I wasn't told what

11         exactly they said.

12                   THE COURT:  Mr. Kessler, do you want

13         to address this issue?

14                   MR. KESSLER:  Well, Your Honor, I

15         received from Mr. Hough copies of plea

16         agreements from the people he mentioned.  I

17         did go over them with Mr. Rubio while he was

18         housed at CCA.

19                   THE COURT:  Over the plea agreements

20         with him?

21                   MR. KESSLER:  I'm sorry?

22                   THE COURT:  You went over their plea

23         agreements with Mr. Rubio?

24                   MR. KESSLER:  Yes.  And we had

25         statements from some of the individuals from

1          debriefing.  I don't know we had each one of

2          those.

3                    MR. HOUGH:  Judge, I can-- for the

4          record, there's a report of a statement

5          Mr. Garcia-Medina made January the 11th,

6          2010, and on January 4th, 2010.

7                    THE COURT:  Let's stop for just a

8          minute.  Mr. Kessler is talking to Mr. Rubio.

9                    All right.  Mr. Rubio, when

10         Mr. Kessler's visited with you in jail, has

11         he not gone over with you reports that the

12         DEA or the prosecutor put together about

13         interviews that they'd conducted of people

14         involved in the drug organization?

15                   THE DEFENDANT:  I remember that he

16         took some, but I don't remember all of them

17         exactly.

18                   THE COURT:  All right.  But you know

19         that he went over the reports with you about

20         people that were going to be witnesses in

21         this case or that were cooperating with the

22         government, correct?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  So you're aware that

25         there are people that pled guilty in this

1          case or in other cases that have made

2          statements that you were involved in drug

3          dealing with Mr. Molina and others, correct?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  All right.  Mr. Hough,

6          do you want to make a record on the actual

7          statements?  I don't know that it's

8          necessary, but--

9                    MR. HOUGH:  Yes, Judge.  Mr. Renato

10         Garcia-Medina was debriefed post plea on

11         January 4th and January the 11th of 2010.

12                   THE COURT:  All right.  Let's stop.

13                   Mr. Rubio, are you aware that

14         Mr. Renato Garcia-Medina made statements

15         against you?

16                   THE DEFENDANT:  I knew-- I knew that

17         he was talking.  My attorney had said that he

18         was talking against me.  But I don't know.  I

19         don't know.

20                   THE COURT:  Okay.  Well, it sounds

21         to me like Mr. Rubio has been privy to what

22         Mr. Kessler knew from the reports.  There are

23         a lot of reports and perhaps Mr. Rubio can't

24         remember who said what exactly.

25                   If you could just summarize,

1        Mr. Hough, what these cooperating individuals

2        had to say about Mr. Rubio to make sure that

3        he's aware that there are people that are

4        cooperating that say certain things against

5        him.

6             MR. HOUGH:  Judge, Mr. Renato

7        Garcia-Medina actually testified in the

8        Pascual Vazquez-Villa trial, and I understand

9        Mr. Kessler got a copy of that and discussed

10        with his client.  Additionally, January 4th

11        of 2010 Mr. Renato Garcia-Medina indicated

12        that he had travelled from Mexico to the

13        United States in 2007 to work for Adan Molina

14        as a narcotics distributor.  His job for

15        Molina was to deliver narcotics, primarily

16        methamphetamine, at the direction of Molina

17        and some of his clients.  He, in August of

18        '08, returned to Mexico, returned February

19        '09, and upon his return, came with a friend

20        of Molina's from El Paso to return to work

21        for Molina in '09 for the purpose of

22        delivering narcotics, primarily

23        methamphetamine.

24             Molina provided the residence at 530

25        North 57th Street in Kansas City, Kansas, and

1    the vehicle.  Additionally, he was paid

2    between 1,000 and 1,500 a month for his

3    services and expenses such as gas, vehicle

4    maintenance, and residence utilities.  A

5    maroon Mercury Sable was provided for him to

6    utilize to deliver methamphetamine for the

7    organization.  It was equipped with a

8    concealed compartment in the dash behind the

9    stereo.

10          THE COURT:  Okay, let me stop you,

11   Mr. Hough.  What you're summarizing is the

12   testimony of Mr. Garcia-Medina in another

13   trial.  There was a trial transcript made of

14   this?

15          MR. HOUGH:  Yes, ma'am.

16          THE COURT:  And Mr. Kessler received

17   it?

18          MR. HOUGH:  Yes, ma'am.  And in

19   addition to that, the statement, the complete

20   statement January 4th of 2010 to law

21   enforcement that included matters beyond what

22   he actually testified to.

23          THE COURT:  Okay.  And Mr. Kessler

24   received that as well.  But, Mr. Hough, what

25   you were just summarizing, is this what

1        Mr. Renato Garcia-Medina said that he did, or

2        is this what he said that Mr. Rubio did?

3                MR. HOUGH:  Garcia-Medina says that

4        he did with Mr. Rubio and Mr. Molina.

5                THE COURT:  Okay.  Well, I don't

6        know that we need to get into all the details

7        about what Mr. Garcia-Medina did.  I just

8        want to make sure that Mr. Rubio is aware

9        that there is evidence that a number of

10       people who are going to testify in this case

11       have said that he was involved in

12       Mr. Molina's drug organization.

13                Is that-- is that correct,

14       Mr. Rubio?

15                THE DEFENDANT:  Yes.

16                THE COURT:  All right.  Now in

17       addition, there's a written plea agreement.

18       Have you gone over this plea agreement with

19       Mr. Kessler so that you understand the terms

20       of your plea agreement with the government?

21                THE DEFENDANT:  Yes.

22                THE COURT:  And there's a separate

23       document called a Petition to Enter Plea.

24       Have the two of you gone over that this

25       morning?

1              THE DEFENDANT:  Yes.

2              THE COURT:  And did Mr. Kessler tell

3      you about your right to a jury trial?  I

4      assume he did since you've been exercising

5      that right so far and we've been in the

6      middle of a jury trial.  Are you aware of

7      that?

8              THE DEFENDANT:  Yes.  Yes.

9              THE COURT:  But you understand,

10     Mr. Rubio, that once you plead guilty, that

11     will end the jury trial for you and there

12     will not be any further jury trial?

13             THE DEFENDANT:  Yes.

14             THE COURT:  All right.  And you

15     heard all the things that I've told the jury

16     about how the jury trial works; that in order

17     to convict you, all 12 jurors would have to

18     unanimously agree with each other that the

19     government had proven you guilty beyond a

20     reasonable doubt.  Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And that the jury is

23     required to presume you to be innocent of the

24     charges unless and until the government

25     proves you guilty beyond a reasonable doubt?

1                  THE DEFENDANT:  Yes.

2                  THE COURT:  And that you don't have

3          to prove anything in this trial because

4          you're presumed innocent.  You don't have to

5          present evidence, you don't have to testify

6          unless you would like to.  Do you understand

7          that?

8                  THE DEFENDANT:  Yes.

9                  THE COURT:  And the jury can't hold

10         that against you if you don't testify.  Do

11         you understand that?

12                 THE DEFENDANT:  Yes.

13                 THE COURT:  And that you have a

14         right to counsel, an attorney throughout the

15         trial, whether or not you have money to pay;

16         and that you also have the right to confront

17         and cross-examine the government's witnesses

18         in trial and perhaps in that way to point the

19         jury to doubt in the evidence.  Do you

20         understand that right as well?

21                 THE DEFENDANT:  Yes.

22                 THE COURT:  All right.  Are you

23         satisfied-- oh, also, did Mr. Kessler discuss

24         with you how the Court generally determines a

25         sentence for someone by using sentencing

1        guidelines and also a sentencing statute?

2        Did he tell you about that?

3                THE DEFENDANT:  Yes.

4                THE COURT:  Are you satisfied with

5        the advice and representation that you've

6        received from Mr. Kessler in this case?

7                THE DEFENDANT:  Yes.

8                THE COURT:  All right.  The written

9        plea agreement between you and the

10       government, Mr. Rubio, whose decision was it

11       for you to enter into this plea agreement?

12               THE DEFENDANT:  Mine.

13               THE COURT:  Did anyone pressure you

14       or threaten you to make that decision?  Or

15       did you make the decision voluntarily and of

16       your own free will?

17               THE DEFENDANT:  It was on my own

18       will.

19               THE COURT:  All right.

20               Mr. Hough, please summarize the

21       terms of the plea agreement.

22               MR. HOUGH:  Your Honor, the

23       defendant has agreed to plead guilty to

24       Count 1, conspiracy of the superseding

25       indictment.  He has agreed to stipulate and

1         agree to the factual basis for the guilty

2         plea, which is contained in the written

3         agreement.

4              The defendant further agrees to

5         waive appellate and collateral attack rights,

6         Freedom of Information Act request rights,

7         any request for attorneys' fees.  He agrees

8         to identifying the assets, as fully set out

9         in the written plea agreement, the payment of

10        mandatory special assessment of $100.  He

11        understands the deportation consequences that

12        a violation of 21 United States Code Section

13        846 carry with it.

14             And in return for those things, we

15        will dismiss the remaining charges pending

16        against him in this matter and bring no

17        further charges against him as a result of

18        the activities which give rise to this

19        superseding indictment.

20             THE COURT:  All right.  Mr. Rubio,

21        do you agree that those are the terms of your

22        plea agreement with the government?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Is this written plea

25        agreement the entire agreement between you

1          and the government?  Or are there additional

2          oral agreements that are not included in the

3          written plea agreement?

4                    THE DEFENDANT:  No, that's it.

5                    THE COURT:  Okay.  So the written

6          plea agreement is the entire thing, correct?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  Okay.  And you heard

9          what Mr. Hough said, that as part of this

10          plea agreement there's a provision in

11          paragraph 11 that you are agreeing to waive

12          your appellate rights, your rights to appeal

13          or attack the prosecution, conviction, or

14          sentence in this case.  Now, paragraph 11

15          does carve out an exception, an exception

16          under which you would still have some appeal

17          rights.  But other than that exception you

18          understand you're giving up your appellate

19          rights?

20                    THE DEFENDANT:  Yes.

21                    THE COURT:  And the plea agreement

22          includes things that you and the government

23          agree should be recommended to the Court.

24          But I want you to understand the Court does

25          not have to follow those recommendations.

1       And if I do not, that would not give you the

2       right to withdraw your plea.  Do you

3       understand that?

4               THE DEFENDANT:  Yes.

5               THE COURT:  Because the plea

6       agreement is an agreement between you and the

7       government, but the Court is not a party to

8       this contract, this agreement between you and

9       the government.  Do you understand that?

10              THE DEFENDANT:  Yes.

11              THE COURT:  All right.  And,

12      Mr. Rubio, do you understand that this charge

13      you're pleading guilty to is conspiracy to

14      possess with intent to distribute 500 grams

15      or more of methamphetamine?  Do you

16      understand that?

17              THE DEFENDANT:  Yes.

18              THE COURT:  That's a felony crime.

19      A felony crime is defined as any crime for

20      which you could potentially serve more than

21      one year in prison.  And when anybody's

22      convicted of a felony crime, there are

23      certain civil rights consequences.  You lose

24      the right to vote, you lose the right to

25      serve on a jury, you lose the right to serve

1      in certain public offices, you lose the right

2      to possess or purchase a firearm or dangerous

3      weapon.  And if you are not a naturalized

4      citizen of the United States, or a native

5      born citizen, there are deportation

6      consequences.  Do you understand that?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  And then, of course,

9      there are potential sentencing consequences.

10      Mr. Rubio, sentencing is a very complicated

11      process.  As I said before, I'll be

12      considering a lot of factors under the

13      sentencing guidelines and a lot of factors

14      under the sentencing statute.

15                    Just to very briefly go over some of

16      the main factors, I'll consider the amount of

17      drugs and the type of drugs.  Because under

18      the guidelines, that has a very significant

19      effect on the sentence.  The guidelines are

20      not mandatory, but the Court considers the

21      guidelines as part of its sentencing process.

22                    I'll consider if there were firearms

23      either possessed by you or possessed by

24      others involved in this conspiracy with you

25      because that's something that is an

1    aggravating circumstance under the

2    guidelines.  In other words, a circumstance

3    that may mean a longer sentence than if there

4    were no firearms involved.

5            I consider, under the guidelines,

6    what's called relevant conduct.  That might

7    include, in a drug case such as this, drug

8    amounts that are not charged in the

9    indictment that the government can prove were

10   part of the same conspiracy.  Sometimes

11   relevant conduct can increase someone's

12   sentence.

13           I will consider your role in this

14   crime as compared to the role of the average

15   other participant.  And if you were doing

16   about the same as the average other person,

17   then it has no effect on your sentence under

18   the guidelines.  But, if you were an

19   organizer or manager or supervisor or leader

20   of others, then it might result in a longer

21   sentence.  If, however, you were a minor or

22   minimal person, your involvement was minor or

23   minimal compared to the average other person,

24   it likely would result in a shorter sentence.

25   So those are among the many factors that I

1    consider under the guidelines.

2            I also consider your criminal

3    history.  Under the guidelines, you get

4    what's called a criminal history score that's

5    based on your number of prior criminal

6    convictions, if you have prior criminal

7    convictions.

8            But then I turn and look at

9    everything about you.  I don't just look at

10   your criminal background or your criminal

11   conduct in this case.  I look at who you are

12   as a person -- good, bad, and indifferent.  I

13   look at your current situation and your past

14   situations.  I look at your employment, your

15   education, your medical issues, what your

16   family issues are.

17           And so what it boils down to,

18   Mr. Rubio, is I try to determine a sentence

19   that's based on the entirety of your criminal

20   conduct, but also based on the entirety of

21   who you are as a person for your entire life.

22           And so because the Court considers

23   all of this, it's very complicated.  It takes

24   awhile to work through all that.  And what it

25   means as we sit here today, Mr. Kessler,

1          Mr. Hough, and me, none of us can predict to

2          you with certainty what sentence you'll

3          receive.  Do you understand that?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  But here's what we can

6          tell you with certainty.  The statute that

7          you're pleading under in Count 1 of the

8          indictment, it sets a minimum and a maximum.

9          So I can tell you that your sentence will be

10         within the range of minimum to maximum.  That

11         I can say for sure.

12                    Mr. Hough, what are the statutory

13         penalties?

14                    MR. HOUGH:  Not less than 10 years

15         nor more than life imprisonment; a term of

16         supervised release, in addition to any term

17         of imprisonment of at least five years; a

18         fine of $4 million; and a mandatory special

19         assessment in the amount of $100.

20                    THE COURT:  All right.  So I can

21         tell you with certainly, Mr. Rubio, that you

22         are facing what's called a mandatory minimum

23         of 10 years of actual prison time.  Do you

24         understand that?

25                    THE DEFENDANT:  Yes.

1                    THE COURT:  In the federal system,

2          whatever system you receive is the amount of

3          time you can actually expect to serve.  So if

4          you receive a 10-year sentence, you will

5          serve 10 years.  If you receive a 20-year

6          sentence, you will receive 20 years,

7          et cetera.  Do you understand that?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  There's no probation or

10         parole available for this kind of offense.

11         And the Court has to sentence you to at least

12         10 years of actual prison time.

13                   There are two exceptions under which

14         the Court would be authorized under the law

15         to sentence you to less than 10 years.  The

16         first is what's called the safety valve

17         exception.  I'm pretty sure that exception

18         does not apply to you because it does not

19         apply to crimes of violence, it doesn't apply

20         to crimes involving firearms.  So that

21         probably isn't available to you.

22                   The other exception under which the

23         Court would be authorized to perhaps sentence

24         under 10 years is what's called the

25         substantial assistance exception.  The way it

1    works is if you were to cooperate with the

2    government and if the government believed

3    that your cooperation was of substantial

4    assistance to them, the government would file

5    a motion with the Court before your

6    sentencing telling the Court that.  That

7    would then authorize the Court to give you

8    something less than 10 years, if the Court

9    wanted to.  But keep in mind that even if you

10   cooperate, there's no guarantee you'll get

11   this particular reduction because it's up to

12   the government to decide whether your

13   cooperation is enough to qualify you for the

14   substantial assistance reduction.

15            And I can't force the government to

16   file that motion for you and you can't force

17   them to either.  But if they determine that

18   your cooperation was substantial, they could

19   then file the motion.  That would give me the

20   authority to sentence you to under 10 years.

21   Do you understand that?

22            THE DEFENDANT:  Yes.

23            THE COURT:  All right.  Mr. Hough,

24   what's the factual basis for Mr. Rubio's plea

25   to Count 1 of the indictment?

1          MR. HOUGH:  Your Honor, the

2     defendant has agreed and stipulated to the

3     factual basis for the guilty plea.  We would

4     incorporate that by reference as though fully

5     restated at this time.  We would incorporate

6     by reference the trial evidence the Court's

7     heard and the search warrant affidavits filed

8     in this matter.

9          In a nutshell, if the matter

10     proceeded to trial and a conclusion of this

11     trial, we would prove with competent evidence

12     beyond a reasonable doubt that between at

13     least June 15th, '08, and June the 17th of

14     2009 when he was arrested, that the defendant

15     participated in an organization distributing

16     methamphetamine, and that the amounts of

17     methamphetamine distributed during the course

18     of the conspiracy exceeded 500 grams, and

19     that the conspiracy included Kansas and other

20     states.  That would be our facts, Judge.

21          THE COURT:  All right.  Mr. Rubio,

22     I'll ask you two questions.  The first is:

23     Did you do what you're charged with in

24     Count 1 of the superseding indictment?  Did

25     you agree with at least one other person,

1       here in Kansas, to engage in the distribution

2       of methamphetamine in the approximate time

3       frame of 2008 and 2009?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And my second question

6       is:  Does the government have the evidence to

7       prove that you did that?

8              THE DEFENDANT:  Yes.  Yes.

9              THE COURT:  All right.  Mr. Kessler,

10      if the two of you have filled out the

11      petition to enter plea, Mr. Rubio can go

12      ahead and sign it at this time.

13             MR. KESSLER:  Your Honor, I have the

14      original plea agreement, and we have

15      completed a petition and I'll ask him to sign

16      that now.

17                   (THEREUPON, the defendant

18      executed the petition in open court).

19             MR. KESSLER:  For the Court's

20      information, I'll deliver that to the clerk.

21             THE COURT:  All right.  And,

22      Mr. Rubio, if you'll raise your right hand,

23      we'll acknowledge your signature on the

24      petition.

25                   (THEREUPON, the defendant's

26

1          signature was acknowledged in open court).

2                    THE COURT:  All right.  You can

3          remain standing, Mr. Rubio.  You can remain

4          standing.

5                    All right.  Mr. Hough and

6          Mr. Kessler, do you know of any reason why I

7          should not take Mr. Rubio's plea at this

8          time?

9                    MR. HOUGH:  I do not, Your Honor.

10                   MR. KESSLER:  I know of none, Your

11         Honor.

12                   THE COURT:  Mr. Rubio, would you

13         like me to read aloud to you here in court

14         Count 1 of this superseding indictment, or do

15         you waive the reading of the indictment?

16                   THE INTERPRETER:  Could you repeat

17         the question?

18                   THE COURT:  Yes.

19                   Would you like for me to read aloud

20         to you here in court the charge, Count 1 of

21         the superseding indictment, or do you waive

22         the reading of the indictment?

23                   THE DEFENDANT:  No.

24                   THE COURT:  You don't need me to

25         read it?  Or do you want me to read it?

1          THE DEFENDANT:  No.

2          THE COURT:  Okay.  And how do you

3     plead to Count 1 of the indictment?

4     Superseding indictment, rather?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  All right.  You can be

7     seated, Mr. Rubio.

8          The Court is satisfied and finds

9     that the defendant, Alfonso Rubio-Ayala, is

10    mentally competent at today's hearing and was

11    at the time of the commission of the offense.

12    The Court finds that Mr. Rubio enters his

13    plea on an informed basis.  He's had the

14    advice and representation of experienced and

15    competent counsel.  Supplemented by his

16    colloquy with the Court today, the Court is

17    satisfied that Mr. Rubio is aware of the

18    charges, the factual and evidentiary basis of

19    the charges, his right to a jury trial, the

20    process and procedures of the Court, and

21    potential civil rights and sentencing

22    consequences of pleading guilty.

23         I find that the plea is knowingly

24    and voluntarily made.  I find that it is

25    supported by an independent basis in fact

1          containing each of the essential elements of

2          the offense.  So the plea is accepted and

3          Mr. Rubio is adjudged guilty of Count 1 of

4          the superseding indictment.

5                    I'll order a presentence report.

6          We'll schedule sentencing for January 24,

7          2011, at 9 a.m., detention pending

8          sentencing.  I'll remand Mr. Rubio to the

9          marshals' custody.

10                    MR. KESSLER:  Thank you, Your Honor.

11                    THE COURT:  Thank you.

12                    (THEREUPON, the hearing

13          concluded).

14

15

16

17

18

19

20

21

22

23

24

25

```
1        UNITED STATES OF AMERICA  )
                                   )     ss:
2        DISTRICT OF KANSAS        )

3

4                    C E R T I F I C A T E

5

6            I, Sherry A. Harris, Certified Shorthand

7        Reporter in and for the State of Kansas, do

8        hereby certify that I was present at and

9        reported in machine shorthand the proceedings

10       had the 11th day of November, 2010, in the

11       above-mentioned court; that the foregoing

12       transcript is a true, correct, and complete

13       transcript of the requested proceedings.

14           I further certify that I am not attorney

15       for, nor employed by, nor related to any of

16       the parties or attorneys in this action, nor

17       financially interested in the action.

18           IN WITNESS WHEREOF, I have hereunto set

19       my hand and official seal at Topeka, Kansas,

20       this 22nd day of March, 2011.

21

22                      /s/ Sherry A. Harris
                        Certified Shorthand Reporter
23

24

25
```